**David Paul MYERS, Plaintiff,**

v.

**Sidney WILLIAMS and Upjohn Company, Defendants.**

Civ. No. 92–1609–FR.

United States District Court, D. Oregon.

April 21, 1993.

David Paul Myers, pro se.

Bruce C. Hamlin, Vicki L. Smith, Lane Powell Spears Lubersky, Portland, OR, for defendants.

OPINION

FRYE, District Judge:

Plaintiff, David Paul Myers, brings this products liability action against defendants, Upjohn Company (Upjohn), manufacturer of the prescription drug Halcion, and Sidney Williams, a resident of Kalamazoo, Michigan. Myers seeks monetary damages for injuries he allegedly sustained as a result of using Halcion. Upjohn alleges a counterclaim for injunctive relief to prevent Myers from using or disclosing the chemical formula for Halcion.

The matter before the court is the motion of Upjohn for a preliminary injunction (# 18). Upjohn seeks to enjoin Myers from selling or otherwise making use of the Halcion formula. The motion is granted.

920

## BACKGROUND

Myers is an inmate at the Columbia River Correctional Institution (CRCI). He is currently serving a sentence of imprisonment as a result of a criminal conviction in the case of *State of Oregon v. David Paul Myers*. Myers maintains that his criminal conduct resulted from his use of Halcion, a prescription drug used in the treatment of sleeping disorders.

Upjohn received the approval of the Food and Drug Administration (FDA) to market Halcion in the United States in 1982. As a part of the approval process established by federal regulations, the FDA required Upjohn to submit detailed information concerning the chemical composition, the manufacturing process, and the test results for Halcion to FDA regulators. 21 C.F.R. § 314.50. This data is maintained in the records of the FDA and is available to the public subject to the requirements of the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

Upjohn considers the chemical formula for Halcion to be trade secret information. Accordingly, it has taken steps to maintain the formula under tight security. Upjohn generally restricts access to the Halcion formula to officials of the FDA and to employees of Upjohn who need to know the formula and who obtained appropriate security clearance. Employees of Upjohn who have access to the formula are required to execute confidentiality agreements.

On February 4, 1992, Myers submitted a FOIA request to the FDA seeking information about Halcion. In response to that request, the FDA provided Myers with several pages of documents, including a "Full Statement of Composition" for Halcion (the Composition Statement). The Composition Statement, which contains the chemical formula for the manufacture of Halcion, was provided to Myers by mistake. In a letter to Upjohn dated May 8, 1992, the FDA acknowledged that it erroneously sent a microfiche copy of the document containing the chemical formula for the manufacture of Halcion to Myers.

On June 26, 1992, after learning that Myers had access to the chemical formula for Halcion, Upjohn sent him a letter stating that the Composition Statement had been provided to him in error and requesting that he destroy the original and any copies of the document in his possession. Myers refused to comply with Upjohn's request and instead attempted to sell the Halcion formula to Bristol–Myers Squibb Co., Rhone–Poulenc Rorer, and other pharmaceutical companies. In a letter to Upjohn dated March 19, 1993, Myers indicated that he was prepared to use the Composition Statement to damage Upjohn if the company was unwilling to enter into a civil compromise of his claims. As of this date, however, there is no evidence that Myers has disclosed the Halcion formula to any competitor of Upjohn.

## STANDARDS

To obtain preliminary injunctive relief, the moving party must show either a combination of probable success on the merits and the possibility of irreparable injury, or serious questions on the merits and the balance of hardships tipping in its favor. *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir.1990). These two standards are points on a sliding scale so that the moving party must show greater irreparable harm as its probability of success decreases. *Id.* As used in this formula, " 'serious questions' refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo...." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir.1991) (citation omitted).

## DISCUSSION

Upjohn maintains that the Composition Statement constitutes trade secret information under the Uniform Trade Secrets Act (the Act), O.R.S. 646.461 *et seq.* Upjohn seeks a preliminary injunction enjoining Myers from selling or otherwise distributing the Composition Statement to any person or persons during the pendency of this action. It further requests that the injunction require Myers (1) to return to it the original and any copies of the Composition Statement; and (2) to provide it with the names and addresses of all persons to whom he has attempted to sell the Composition Statement,

along with any correspondence or other documents reflecting such efforts.

Myers argues that he received the Composition Statement pursuant to a valid FOIA request. He, therefore, concludes that he obtained the document legally and is entitled to make use of it as he wishes.

The court finds that Upjohn has satisfied the test for obtaining preliminary injunctive relief.

### I. *Irreparable Harm*

Upjohn has adequately demonstrated that the information contained in the Composition Statement is not readily available to its competitors in the pharmaceutical industry. *See* Affidavit of Richard W. Shattuck. In addition, there is ample evidence that the company derives significant economic benefits from the manufacture and sale of Halcion tablets. *Id.* In correspondence to Upjohn and other drug manufacturers, Myers has acknowledged that the sale of Halcion represents "millions of dollars" to Upjohn, and that Upjohn would be damaged by disclosure of the confidential formula for the drug. Under the circumstances, therefore, Upjohn has made a satisfactory showing that irreparable injury is more likely than not to result if an injunction does not issue.

### II. *Probable Success on the Merits*

Pursuant to the Act, the actual or threatened misappropriation of trade secret information may be temporarily, preliminarily or permanently enjoined. O.R.S. 646.463. Further, the Act makes clear that the "misappropriation" of a trade secret may include:

> Disclosure or use of a trade secret of another without express or implied consent by a person who, before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

O.R.S. 646.461(2)(c).

The court finds that there is a substantial likelihood that Upjohn will prevail on its counterclaim to enjoin Myers from disseminating the Halcion formula. Upjohn has made a strong preliminary showing that the

Composition Statement falls within the definition of a trade secret under the Act. O.R.S. 646.461(4). Further, there is compelling evidence that Myers has threatened to misappropriate the Halcion formula. Myers is aware that the formula is regarded as a trade secret, and that he acquired it by mistake. There is no evidence that Myers has undergone a material change in position since acquiring the Composition Statement; nevertheless, he has persisted in his threats to disclose the Halcion formula to Upjohn's competitors. Based on the record, therefore, the court concludes that Upjohn has demonstrated a likelihood of success on the merits of its counterclaim.

### CONCLUSION

The motion of Upjohn for a preliminary injunction (# 18) is granted.